UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 5:19-cr-00181-EJD-1 |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| v. | |
| HECTOR JESUS DAVILA-CHAVEZ, | Re: Dkt. No. 65 |
| Defendant. | |

Defendant Hector Jesus Davila-Chavez is charged in a one-count indictment with unlawful reentry following deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2). Dkt. No. 1. Pending before the Court is Defendant's motion to dismiss the indictment. Dkt. No. 65. Defendant collaterally attacks his 2016 removal order, which is a predicate element of a conviction under § 1326, asserting two bases for relief: the 2016 removal proceeding was fundamentally unfair, and the immigration court lacked subject matter jurisdiction. The government opposed the motion (Dkt. No. 80) and Defendant filed a reply (Dkt. No. 81). The motion was heard on February 28, 2022, and the Court took the motion under submission. Dkt. No. 89. Pursuant to the parties' stipulation, the Court deferred ruling on the pending motion until after the Ninth Circuit issued decisions in *United States v. Santos-Santos*, USCA Case No. 20-30038, and *United States v. Bastide-Hernandez*, USCA Case No. 19-30006. Dkt. No. 92. After the Ninth Circuit issued decisions in both cases, the parties submitted supplemental briefs (Dkt. Nos. 101-02) and the Court conducted a hearing on September 13, 2022. Based upon all pleadings filed to date and the comments of counsel, the Court denies Defendant's motion to dismiss.

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
1

## I. BACKGROUND

Defendant arrived in the United States in approximately November 2003, when he was seventeen years old. Decl. of Hector Davila-Chavez ("Def.'s Decl."), Dkt. No. 65-1, ¶ 2. Since his arrival in the United States in 2003, Defendant has lived primarily in Monterey County, California. *Id.* ¶ 4.

In August 2016, Defendant was arrested on a warrant for a pending state Driving Under the Influence charge and was housed at Elmwood jail in Milpitas, California. *Id.* ¶ 13. While incarcerated at the Elmwood facility Defendant injured his back. *Id.* ¶ 15. A Custody Nursing Assessment indicates that he had muscle soreness. Dkt. No. 65-2 at 27. The nurse recommended icing the affected area, continuing ibuprofen for pain, and applying an analgesic topical ointment. *Id.* In October 2016, he was transferred to Monterey County jail for pending allegations regarding violating conditions of his probation imposed from his previous conviction for domestic violence. Def.'s Decl. ¶ 15. On October 3, 2016, Defendant was evaluated by a physician who ordered analgesic topical ointment and ibuprofen for back pain. Dkt. No. 65-2 at 4. The doctor discussed treatment options, including trigger point injections, which he declined. *Id.* at 8. Defendant indicates that he asked to have his back x-rayed, but the request was denied. Def.'s Decl. ¶ 17.

On approximately December 13, 2016, Defendant was taken into custody by immigration officials, served with a notice to appear ("NTA"), and eventually taken to a facility in Richmond. *Id.* ¶ 14. Defendant indicates that he repeatedly requested to see a doctor for continuing back pain, but never received any medical treatment. *Id.* ¶ 19.

On December 29, 2016, Defendant attended initial custody redetermination proceedings before the Immigration Judge ("IJ"). *See* Informal Tr. of Dec. 29, 2016 Removal Hr'g, Dkt. No. 65-6. The proceedings were held via videoconference. *Id.* The IJ addressed Defendant through a Spanish-language interpreter. The IJ asked Defendant whether Spanish was his best language and to state his name. *Id.* at 2. The IJ next asked whether Defendant had an attorney. *Id.* at 3. Defendant responded no and said he wanted to go back to Mexico to visit a family member who was ill. *Id.* The IJ acknowledged his request and asked, "[s]o you're not interested in a bond

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
2

1  hearing?" *Id*. Defendant responded, "[n]o, right now I need to go with my family." *Id*. The IJ
2  then proceeded with the removal proceedings. The IJ told Defendant that there were two types of
3  voluntary departure as follows:

> There are two types of voluntary departure and they have different legal requirements. For both you must show that you deserve a favorable exercise of the Court's discretion. If you are granted voluntary departure you would remain in custody until you leave the United States. You may also need to pay for your return trip as well as provide the government with the travel documents. If you are not granted voluntary departure, you may be ordered removed from the United States. If you're removed from the United States and you come back without special permission, you may be charged with a crime. If you're convicted of illegally re-entering the United States after deportation, you can be sentenced up to 20 years in prison and have to pay money fines. Do you understand your rights as I've explained them to you?

11 *Id*. at 4. Defendant responded yes. The IJ next asked whether Defendant wished to proceed
12 without a lawyer. Defendant responded yes. The IJ sustained the charge of removability based on
13 Defendant's admissions (*id*. at 5) and found he was not eligible for any forms of relief from
14 removal other than voluntary departure (*id*. at 8). Defendant was removed to Mexico five days
15 later.

16 Defendant indicates that he was very nervous, stressed, and anxious during the removal
17 hearing because he did not have an attorney there to help him. Def.'s Decl. ¶ 22. He was also
18 experiencing severe back pain. *Id*. ¶ 21. He wanted to "get the hearing over with quickly because
19 [he] was in a lot of pain, and wanted to see a doctor." *Id*. ¶ 22. He also wanted to get out of
20 custody as soon as possible because his grandfather was very ill in Mexico, and he wanted to be
21 with him before he died. *Id*. ¶ 33.

22 The indictment alleges that Defendant was found in the United States in Monterey County
23 on or about October 10, 2018, after having been removed. *Id*. Defendant moves to dismiss the
24 indictment, arguing that the 2016 removal was fundamentally unfair based on the IJ's failure to
25 properly advise him of his eligibility for pre-hearing voluntary departure. Mot. at 4.

26 **II.     STANDARDS**

27 "For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government

28 Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
3

must establish that the defendant 'left the United States under order of exclusion, deportation, or removal and then illegally reentered.'" *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014). "A defendant charged under 8 U.S.C. § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id*. (internal quotation marks and citation omitted). "[A] collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review." *United States v. Palomar-Santiago*, ––– U.S. ––––, 141 S. Ct. 1615, 1619, 209 L.Ed.2d 703 (2021) (quoting *United States v. Mendoza-Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)).

A defendant can successfully "challenge" a removal order by demonstrating that (1) he exhausted administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Failure to satisfy any one of these three prongs "dooms a collateral attack on a removal order." *United States v. Castellanos-Avalos*, 22 F.4th 1142, 1145 (9th Cir. 2022) (citing *Palomar-Santiago*, 141 S. Ct. at 1620). To satisfy the third prong, the defendant has the burden of establishing both that the removal proceeding violated his due process rights and that the violation caused prejudice. *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (citation omitted).

"The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief' so that he has 'a meaningful opportunity to appeal the fact that he was not advised of that right.'" *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012). During a removal hearing, "where the record contains an inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'" *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran–Enriquez v. INS*, 884 F.2d 420, 422–23 (9th Cir. 1989)). "Even if the alien's eligibility is not clearly disclosed in the record, the IJ has a duty

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
4

to discuss discretionary relief with the alien so long as the record as a whole raises a reasonable possibility of eligibility of such relief." *United States v. Andrade-Partida*, 110 F. Supp. 2d 1260, 1268 (N.D. Cal. 2000). "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) (internal quotation marks omitted).

To establish prejudice, a defendant "must only show that he had a 'plausible' ground for relief from deportation." *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001) (quoting *Arrieta*, 224 F.3d at 1079). "A plausible claim to relief . . . requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012).

## III.  DISCUSSION

Defendant asserts that the immigration court lacked subject matter jurisdiction, rendering the removal order invalid. Additionally, Defendant asserts that the IJ did not advise him of his right to pre-hearing voluntary departure and the specific requirements for that relief or provide him an opportunity to present evidence favoring that relief. Defendant asserts that he was prejudiced because he was a viable candidate for pre-hearing voluntary departure. The Court discusses each argument below, and ultimately concludes that Defendant's inability to show prejudice is dispositive of the instant motion.

### A.  Subject Matter Jurisdiction

Defendant contends that the 2016 removal cannot support the instant prosecution because the IJ lacked subject matter jurisdiction to order him removed. Specifically, Defendant contends that the putative notice to appear ("NTA") was defective insofar as it failed to provide the time, date and place of hearing information as required by 8 U.S.C. § 1229(a)(1), and therefore subject matter never vested under § 1229(a).

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
5

1     Defendant's argument is foreclosed by *United States v. Bastide-Hernandez*, 39 F.4th 1187
2 (9th Cir. July 11, 2022) (en banc).  In *Bastide-Hernandez*, the Ninth Circuit held that, consistent
3 with its "own precedent and that of every other circuit to consider this issue," "the failure of an
4 NTA to include time and date information does not deprive the immigration court of subject
5 matter jurisdiction." *Id*. at 1188.  During the September 13, 2022 hearing, Defendant noted his
6 disagreement with *Bastide-Hernadez*, but conceded the jurisdiction issue.  He also expressed his
7 intent to preserve the issue should the Supreme Court consider the issue in the future.

**B.      Due Process Violation**

The record supports finding that the IJ did not meaningfully advise Defendant of his right to seek pre-hearing voluntary departure or to present evidence favoring that relief.  Instead, the IJ gave Defendant only a perfunctory explanation and incomplete information.  The IJ informed Defendant that there were two types of voluntary departure with different legal requirements without explaining the differences between the two types.  The IJ did not explain the circumstances under which either relief is available, much less inform Defendant whether he was eligible for such relief.  The IJ indicated that both types of voluntary departure require a showing that Defendant "deserved a favorable exercise of the Court's discretion," but again, failed to explain the relevant factors for discretionary relief.  While it is true that Defendant told the IJ he needed to be with his family in Mexico because his father was ill and hospitalized, he did not say he was unwilling to depart voluntarily immediately, nor is there any reason to think that he would have declined to do so if the IJ had explained the process to him.  Consequently, Defendant's due process rights were violated by defects in the deportation proceeding.  *See Arrieta*, 224 F.3d at 1079 (finding due process violation based on IJ's failure to mention eligibility for waiver under 8 U.S.C. § 1182(h) when IJ should have known defendant was eligible); *United States v. Cardiel-Ruiz*, 533 F. Supp. 3d 846 (N.D. Cal. 2021) (dismissing indictment based on IJ's failure to explain eligibility requirements of voluntary departure and to allow presentation of evidence); *United States v. Rojas-Osorio*, 381 F. Supp. 3d 1216, 1228-29 (N.D. Cal. 2019) (dismissing indictment based on IJ's failure to ask defendant if he wanted to apply for pre-hearing voluntary departure,

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
6

failure to explain the requirements for voluntary departure or how defendant could qualify and establish his eligibility); *United States v. Pineda-Rodriguez*, No. 17-CR-00061-LHK, 2019 WL 1370359 (N.D. Cal. Mar. 26, 2019) (finding due process violation where IJ failed to clarify the differences between pre-hearing and post-hearing voluntary departure and failed to give defendant explanation and information on the procedure or requirements for pre-hearing voluntary departure); *Zamudio-Pena v. Holder*, 333 F.App'x 165, 168 (9th Cir. 2009) (unpublished) ("The IJ's failure to properly advise Zamudio-Pena of his apparent eligibility for pre-hearing voluntary departure and of the differences between pre-hearing and post-hearing voluntary departure violated his right to due process."); *United States v. Rodriguez-Arroyo*, 467 Fed. App'x. 746, 747 (9th Cir. 2012) (unpublished).

### C. Prejudice

Defendant contends that he suffered prejudice because in the absence of the due process violations, he could have received voluntary departure relief. To establish prejudice, Defendant must make a " 'plausible showing' that an [IJ] presented with all of the facts would exercise discretion in [his] favor." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015); *see also United States v. Santos-Santos*, No. 20-30038, 2022 WL 2801033 (9th Cir. July 18, 2022). There is a two-step process for determining whether an alien claiming eligibility for voluntary departure has made this showing. *Gonzalez-Flores*, 804 F.3d at 927 (citing *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013)). First, the court considers the positive and negative factors an IJ would consider relevant to an exercise of discretion. *Rojas-Pedroza*, 716 F.3d at 1264-65. The positive factors include the alien's "long residence, close family ties to the United States, and humanitarian needs." *Id*. at 1265. Negative factors include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id*. (quoting *Matter of Arguelles–Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999)). Second, the court must consider whether, "in light of these factors and the circumstances of the alien's case, the

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
7

alien carried the burden of proving 'it was plausible (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor.'" *Gonzalez-Flores*, 804 F.3d at 927 (quoting *Rojas-Pedroza*, 716 F.3d at 1263). In assessing whether the alien carried this burden, the focus is on whether aliens with similar circumstances received relief. *Rojas-Pedroza*, 716 F.3d at 1263. "[T]he existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure. That is plainly insufficient. . . ." *United States v. Valdez–Novoa*, 780 F.3d 906, 920–21 (9th Cir. 1999).

        Applying the two-part test for prejudice, the Court finds Defendant's positive equities include the following: He had lived in the United States since 2003, *i.e.*, since he was a teenager. Def.'s Decl. ¶ 2. He states in his Declaration that he has a daughter, age five at the time of the removal proceeding whom he helped raise, supported financially, and had lived with until he separated from his daughter's mother. *Id*. ¶¶ 24-25.[1] His daughter is a United States citizen. *Id*. ¶ 24. He was very close with his daughter and saw her regularly. *Id*. ¶ 25. He provided emotional and financial support not only for his daughter, but for other immediate family as well, including his mother. *Id*. ¶¶ 24-26. In 2015, his mother was a Legal Permanent Resident. *Id*. ¶ 27. Defendant also has a brother, uncles and cousins who are citizens residing in the United States. *Id*. ¶ 28. Defendant has had long-term and stable employment history, sometimes working two jobs, since he came to the United States. *Id*. ¶¶ 2-11.

        Defendant's negative equities consist of several criminal convictions over approximately eight years. Specifically, Defendant has four prior convictions for Driving Under the Influence of Alcohol occurring in 2008, 2012, 2013, and 2015. Dkt. No. 65-3. The DUIs are considered a "serious negative factor" in the voluntary departure analysis. *Rojas–Pedroza*, 716 F.3d at 1265. In 2015, Defendant was convicted of receiving stolen property. *Id*. In 2016, Defendant was convicted of Felony Domestic Violence ("Inflicting Corporal Injury on Spouse"). Thereafter, in

---

[1] During the removal proceeding, Defendant mistakenly answered "no" when asked whether he had a spouse, parent or child who is a lawful permanent resident or U.S. citizen. *Id*. ¶35.

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

8

November of 2016, Defendant was sentenced to six months of incarceration for violating his probation and court orders imposed in the Felony offense. Dkt. No. 65-9 at 2.

Turning to the second part of the test for prejudice, Defendant argues that he has shown sufficient prejudice such that the court should grant his motion. Defendant cites several cases that he argues factually support a finding of prejudice in his case. However, a review of additional cases shows that the BIA has affirmed denials of voluntary departure in cases with equities similar to or more favorable than Defendant's equities. In *In Matter of Posadas–Posadas*, 2012 WL 371659 (BIA Jan. 18, 2012), the BIA affirmed a denial of voluntary departure as a matter of discretion where the respondent's arrest for driving under the influence followed by two arrests for driving on a suspended license outweighed the positive equities of family ties and length of stay in the United States. In *Matter of Serna*, 20 I. & N. Dec. 579, 580, 586 (BIA 1992), the BIA affirmed a denial of voluntary departure as a matter of discretion where the alien had a single conviction for the possession of an altered immigration document, even though he had been residing in the United States for seven years and intended to marry a United States citizen with whom he had a child. Defendant's criminal history in this case is much more serious and extensive compared to *Posadas-Posadas* and *Matter of Serna*.

In *United States v. Santos-Santos*, No. 20-30038, 2022 WL 2801033 (9th Cir. July 18, 2022), the defendant was similarly situated to Defendant in this case. In *Santos-Santos*, the defendant had "minimal positive equities" including residence and employment in the United States for several years, and nephews who were permanent residents or citizens of the United States. *Id*. at 1. His negative equities included convictions for driving without a license in 2006 and 2008, a DUI in 2009, and shoplifting. These equities led the *Santos-Santos* court to conclude that the defendant had failed to establish the prejudice element of his collateral challenge.[2] Here,

---

[2] *United States v. Sanchez*, 853 Fed. Appx. 201 (9th Cir. 2021), an unpublished decision, also weighs against finding prejudice in this case. In *Sanchez*, the Ninth Circuit concluded it was not plausible that an IJ would have granted relief to Sanchez based on positive and negative equities. *Id*. Sanchez arrived in the United States as a child, attended school and worked in the United States. Although he had U.S. citizen children and a U.S. citizen fiancée, Sanchez was convicted of felonies and misdemeanors, and the conduct underlying some of his convictions "could have

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
9

1  Defendant's positive and negative equities are similar to those in *Santos-Santos* such that they
2  support the conclusion that Defendant cannot carry his burden of establishing prejudice.

3  Defendant cites to several cases he contends show that voluntary departure grants are
4  plausible even in the face of considerable criminal histories, but none are as analogous as *Santos-*
5  *Santos*. For example, the defendant in *Matter of Battista*, 19 I. & N. Dec. 484 (BIA 1987), was
6  convicted of breaking and entering, grand theft, and possession of criminal tools, but had
7  significant compensating equities, including that he had been living in the United States for eleven
8  years at the time of his removal, had entered on a nonimmigrant visa, had been the beneficiary of
9  an approved visa petition filed by his U.S.-citizen father, and was married to a citizen who was
10 pregnant with his child. In contrast to *Battista*, Defendant has fewer and less significant
11 compensating equities.

12 Defendant also relies on *United States v. Vasallo-Martinez*, 360 Fed. App'x. 731, 732-33
13 (9th Cir. 2009) (unpublished), but the case is readily distinguishable. In *Vasallo-Martinez*, the
14 defendant had four convictions for DUI and three unrelated misdemeanors but had more positive
15 equities. Vasallo-Martinez entered the United States as a young child; lived in the United States
16 for at least 21 years before his deportation by stipulated removal; graduated from high school;
17 earned a degree in automotive technology, worked as a technician for 17 years, and owned his
18 own automotive business; and was married to a United States citizen for six years and had a 3
19 year-old United States citizen child. Defendant's positive compensating equities are less
20 significant than those in *Vasallo-Martinez*. Defendant's remaining case citations are similarly

---

resulted in serious injury." *Id.* at 202 (quoting *United States v. Valdez-Novoa*, 780 F.3d 906, 917, 920 (9th Cir. 2015)). In addition, Sanchez failed to comply with the terms of probation and parole at least eight times, and he missed court hearings at least sixteen times. *Id.* Sanchez's offenses had also grown more frequent and serious over time, and one of his convictions constituted a non-waivable ground of inadmissibility. *Id.* Defendant's criminal history in this case is more serious than Sanchez's history in light of Defendant's conviction for Felony Domestic Violence. Furthermore, like *Sanchez*, Defendant's multiple convictions for driving under the influence of alcohol show repeated violations of court orders and lack of rehabilitation and could have resulted in serious injuries.

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
10

distinguishable from his case because of the positive equities relative to the negative equities for the defendant in each of those cases. *See United States v. Ortega*, 751 Fed. App'x. 985 (9th Cir. 2018) (unpublished) (defendant's criminal history included felony bail jumping and seven misdemeanor convictions, but his positive equities including near-lifetime residence in the United States, regular employment, and support for his wife and two U.S. citizen children); *United States v. Cuenca-Vega*, 544 Fed. App'x. 688, 690 (9th Cir. 2013) (unpublished) (defendant who had moved to the United States at age 13 with his mother, who became a naturalized United States citizen, and had lived in United States for ten years, graduated from high school, and had a work history, had plausible claim for voluntary departure despite misdemeanor conviction for possession of methamphetamine); *United States v. Alcazar-Bustos*, 382 Fed. App'x. 568, 569 (9th Cir. 2010) (unpublished) (defendant with firearm convictions as a teenager, but with near-lifetime residence in the United States and family members with citizenship, had plausible claim for voluntary departure); *United States v. Reyes*, 907 F. Supp. 2d 1068, 1070 (N.D. Cal. 2012) (defendant with a conviction for possessing short-barreled shotgun, but with long history of working and providing for his girlfriend and child had plausible ground for voluntary departure); *In re Gonzales–Figueroa*, 2006 WL 729784 (BIA Feb. 10, 2006) (affirming voluntary departure for individual with four convictions for assault, one conviction for resisting arrest, and numerous arrests, who joined Alcoholics Anonymous while in prison and reportedly no longer drank); *In re Pineda–Castellanos*, 2005 WL 3833024 (BIA Nov. 16, 2005) (affirming voluntary departure for individual with six criminal convictions including battery, drunkenness, and driving under the influence of alcohol and stating that granting voluntary departure "was more than generous").

In addition to the negative equities discussed above, Defendant's stated desire to return to Mexico weighs against finding prejudice. *See United States v. Manuel Ceja-Melchor*, No. 19-CR-00184-LHK, 2021 WL 3616777, at *11 (N.D. Cal. Aug. 16, 2021) ("given Defendant's lengthy criminal history and desire to be removed quickly to Mexico, it is unlikely that Defendant would be able to demonstrate that he was prejudiced by the IJ's denial of voluntary departure.").

In sum, the balance of positive and negative equities in this case indicates that Defendant

does not have a plausible claim for voluntary departure. His criminal history, which spans at least eight years, is significant not only because of the number of convictions, but because of the serious nature of the offenses. It is also evident that Defendant committed some of the offenses while he was on court ordered probation. Defendant's consistent pattern of failing to follow court orders and to follow the law are aggravating factors that significantly outweigh the positive equities. Moreover, the offenses demonstrate a troubling disregard for his responsibilities as a father and as a financial provider for other members of his family. Accordingly, the Court finds that Defendant cannot show prejudice.

### D. Exhaustion and Judicial Review Requirements

As noted previously, an alien must exhaust administrative remedies and show deprivation of the opportunity for judicial review before collaterally attacking a deportation order under § 1326. *See* 8 U.S.C. § 1326(d)(1)-(2). An alien exhausts administrative remedies by appealing to the Board of Immigration Appeals ("BIA"). *Palomar-Santiago*, 141 S.Ct. at 1621 (describing exhaustion of administrative remedies as "appealing the immigration judge's decision to the BIA"). If unsuccessful with the BIA, an alien can seek review of the BIA's decision before a federal court of appeals. *Id*.

In general, when Congress uses "mandatory language" in an administrative exhaustion provision, "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). The Supreme Court recently reaffirmed this principle, holding that section 1326(d) uses such "mandatory language," and therefore "a court may not excuse a failure to exhaust." *Palomar-Santiago*, 141 S. Ct. at 1621 (citing *Ross*, 578 U.S. at 639). The Supreme Court's decision *Palomar-Santiago* casts doubt on the continued vitality of the Ninth Circuit's authority excusing exhaustion under certain circumstances. *See Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021) (*Palomar-Santiago* "casts doubt on the continued vitality of our exhaustion excusal rule under § 1326(d)."). At present, however, Ninth Circuit authorities regarding exhaustion excusal remain binding, as the government acknowledges. *See* Tr. of Feb. 28, 2022 Hr'g, Dkt. No. 100, at 23, 26.

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
12

Here, Defendant did not appeal the IJ's decision. When asked by the IJ whether he wanted to appeal the decision, Defendant responded "[t]he decision right now that's fine." Dkt. No. 65-6 at 8. A valid waiver of the right to appeal bars a collateral attack of an underlying removal order. *Muro-Inclan*, 249 F.3d at 1182. In order for a waiver to be valid, however, it must be both "considered and intelligent." *Arrieta*, 224 F.3d at 1079 (citing *Mendoza–Lopez*, 481 U.S. at 840). In *Arrieta*, the Ninth Circuit held that the defendant had met the procedural prerequisites of § 1326(d) despite having waived his right to appeal. *Id*. at 1079. The *Arrieta* court reasoned that the defendant had no opportunity to "make a considered and intelligent decision about his right to appeal" because "the IJ never informed him of his eligibility" for a waiver under 8 U.S.C. § 1182(h) or "any other possible mechanism" to avoid removal, and so he was deprived of "a meaningful opportunity for judicial review." *Id*. Similarly, in *Rojas-Pedroza*, the Ninth Circuit held that he exhaustion requirement is excused if the IJ in the underlying removal proceeding "failed to inform the defendant of his or her apparent eligibility for relief as required by 8 C.F.R. § 1240.11(a)(2)." *Rojas-Pedroza*, 716 F.3d at 1262 (internal quotation marks omitted).

As discussed previously, the IJ failed to meaningfully advise Defendant of his eligibility for pre-hearing voluntary departure or give him a genuine opportunity to pursue this relief. Therefore, his appeal waiver was not considered and intelligent. *See id*. (defendant who was not informed of eligibility for waiver under 8 U.S.C. § 1182(h) or any other possible mechanism to obtain relief from deportation could not make a considered and intelligent decision about whether to appeal the IJ's deportation order); *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013) ("[A]n IJ's failure to inform the alien that he is eligible for a certain type of relief also satisfies § 1326(d)(1) and (d)(2), because an alien who is not made aware of his or her apparent eligibility for relief has had no 'meaningful opportunity to appeal' the removal and seek such relief.") (internal quotation marks and citation omitted); *see also Melendez–Castro,* 671 F.3d at 954 ("[B]ecause of the underlying defect in Melendez–Castro's deportation hearing. . . , we hold that his waiver of appeal was neither 'considered' nor 'intelligent,' and it is therefore invalid."). It follows that under current Ninth Circuit authority, Defendant is excused from

Case No.: 5:19-cr-00181-EJD-1
ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT
13

complying with § 1326(d)(1) and (d)(2).

## IV.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the indictment is DENIED.

**IT IS SO ORDERED.**

Dated: September 16, 2022

EDWARD J. DAVILA
United States District Judge